FAX or Internet
_____

UNITED STATES DISTRICT COURT

for the

District of Arizona

In the Matter of the Search of         )
                                       )
**A silver four-door sedan with no license plate,**   )
**no visible manufacturer's identification, and**    )   Case No.   22-4119mb
**no visible vehicle identification number;**        )
**located in Teesto, Arizona**                       )

### ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer.

An application by a federal law enforcement officer for the government requests the search of the following person or property located in the     District of Arizona
*(identify the person or describe the property to be searched and give its location)*:

**See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**See Attachment B.**

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before      May 6, 2022
                                                               *(not to exceed 14 days)*

[X] in the daytime 6:00 a.m. to 10 p.m.     [ ] at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
            **Camille D. Bibles**                    .
                  *(Name)*

[ ] I find that immediate notification may have an adverse result as specified in 18 U.S.C. §3103a (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*    [ ] for _____ days *(not to exceed 30)*.
                                                                                   [ ] until, the facts justifying, the later specific date of _____.

Date and Time Issued: _____     **Camille D. Bibles**   Digitally signed by Camille D. Bibles
                                          _____   Date: 2022.04.22 13:43:54 -07'00'
                                                *Judge's Signature*

City and State:    Flagstaff, Arizona          Hon. Camille D. Bibles, United States Magistrate Judge

| Return | | |
|---|---|---|
| Case No.: 22-4119mb | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing Officer's Signature*

_____
*Printed Name and Title*

FAX or Internet

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:
A silver four-door sedan with no license plate, no visible manufacturer's identification, and no visible vehicle identification number; located in Teesto, Arizona

)
)
)
)
)

Case No. 22-4119mb

(Original To Be Filed With Court)

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, <u>Special Agent Brian McGrew</u>, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**See Attachment A.**

located in the District of Arizona, there is now concealed *(identify the person or describe the property to be seized):*

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

[X] evidence of a crime;

[ ] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1153, 113(a)(3) and 113(a)(6) | Assault with a Dangerous Weapon and Assault Resulting in Serious Bodily Injury (Indian Country) |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Emma Mark

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

_____
*Applicant's Signature*

Brian McGrew, FBI Special Agent
*Printed Name and Title*

__X__ Sworn by Telephone

Date/Time: _____

Date: _____

City and State:  Flagstaff, Arizona

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.04.22 13:35:52 -07'00'
*Judge's Signature*

Camille D. Bibles,
United States Magistrate Judge
*Printed Name and Title*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**ELECTRONICALLY SUBMITTED AFFIDAVIT IN SUPPORT
OF AN APPLICATION FOR A SEARCH WARRANT**

I, FBI Special Agent Brian McGrew, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since February of 2005. I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in narcotics investigations, white collar crime, cyber-crime, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. I am currently assigned to the Flagstaff Resident Agency of the Phoenix Division. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. In the course of my official duties, I am charged with the investigation of crimes occurring on the Navajo Nation Indian Reservation (Navajo Nation) within the District of Arizona. Based on my training, education, and experience, I know that the Navajo Nation is a federally recognized tribe.

2. The information contained in this affidavit comes from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

1

## INTRODUCTION

3. As more fully described below, this matter involves the investigation of a shooting that took place in the early morning hours of March 26, 2022, in the Dilkon District on the Navajo Nation Indian Reservation, located within the District of Arizona. One victim, KB was shot in the lower back. Three other individuals who were believed to be at the scene of the shooting have since been reported missing.

4. This affidavit supports the application for a search warrant authorizing the search of an immobile, silver four-door sedan where a firearm or firearms were possibly concealed by the alleged subject(s). There is probable cause to believe that evidence of assault with a dangerous weapon and assault resulting in serious bodily injury, in violation of Title 18, United States Code, §§ 1153, 113(a)(3) and 113(a)(6) will be located in the vehicle. The vehicle is particularly described in **Attachment A**, and the evidence being sought is particularly described in **Attachment B**.

## PROBABLE CAUSE

5. The Navajo Division of Public Safety (NDPS) Dilkon District Police Department contacted the FBI on March 26, 2022, to report several 911 calls received by their dispatch center. The dispatch center received a telephone call from Rena Yazzie at approximately 4:05 AM reporting an individual arrived at her house and rang the doorbell several times. The individual stated, "There's a shooting a Christopher Kanuho's house." The individual then tried, unsuccessfully, to enter Rena's house.

6. Dilkon Police Officer Caitlin Morris responded to the area and contacted Rena Yazzie and her husband, Melvin Yazzie. Officer Morris asked Melvin if he had heard

2

any gunshots in the area and Melvin pointed in the direction of Christopher Kanuho's residence.

7. Office Morris then contacted Emerson Preston near Rena and Melvin Yazzie's residence, who admitted to knocking on doors in the area and causing damage to one of them. Emerson stated, "you can take me in, they are trying to kill me" and was arrested for criminal damage.

8. While in custody, Emerson stated that he was recently at Christopher Kanuho's residence. He indicated other people present included KK (later reported missing), KB, and "Ziggy." Emerson said that while inside a bedroom at the house, "Ziggy" said "I'm calling my brothers" and two unknown men arrived. One man was holding a shotgun and one was holding a rifle. There was a commotion in the living room and Emerson fled the residence. As he was running away, Emerson heard five or six gunshots.

9. The dispatch center received another telephone call at approximately 4:39 AM from an individual identifying himself as Damien. Damien's call was relayed to Officer Morris. Damien stated he needed an ambulance at Gene and Irene Kanuho's residence, north of Teesto, Arizona. Damien stated a woman had suffered a gunshot wound. Damien stated the woman was in the residence's bathroom and Damien was attempting to assist her.

10. According to area residents, Gene and Irene Kanuho are deceased and their son, Christopher, currently resides at their former residence.

3

11. Officer Morris drove to Christopher Kanuho's residence where she observed what appeared to be bullet holes penetrating the glass in the front door. Officer Morris immediately entered the residence to determine whether anyone inside the residence required medical assistance. Officer Morris observed expended cartridge casings on the residence's floor immediately upon her entry. Officer Morris also observed what appeared to be blood pooled on the residence's floor. Officer Morris did not locate anyone inside of the residence.

12. The FBI was informed of a woman in transit to the Flagstaff Medical Center (hereinafter FMC) in Flagstaff, Arizona on March 27, 2022. The woman had a gunshot wound in her lower back. FBI Special Agents interviewed the woman at FMC on March 28, 2022. The FBI Agents identified the woman as KB. KB stated she was shot by an unknown person near Teesto on March 26, 2022. KB recalled hearing two gunshots before her hearing was overwhelmed by the sound of ringing in her ears. KB stated that she saw the side of a man's face after she was shot. The man had walked up to the window of the bedroom she was in when she was shot. The man was wearing a dark colored bandanna. KB attempted to treat her injury herself for several hours after she was shot. KB finally requested her uncle transport her to a hospital. FMC medical personnel informed KB there was a bullet lodged in her spine.

13. FBI Agents, including myself, executed a search warrant at Christopher Kanuho's residence on March 31, 2022. We did not locate anyone inside of the residence while executing the search warrant.

4

14. FBI Agents observed two expended shotgun shells at the southeast (back door) entrance of the residence. We observed a hole in the residence's back door, apparently made by one or more shotgun pellet impacts and penetrations. We observed multiple shotgun pellet strings (impact marks) on the residence's interior walls and ceilings while standing in the back door's threshold. Additional apparent projectile impact marks were evident in the kitchen adjacent to the back door's entrance. These impact marks also appeared to originate from the back door entrance.

15. FBI personnel collected several nine-millimeter expended cartridge casings, a shotgun wad, a knife, and a carpet segment with a large area of reddish-brown substance in the living room area adjacent to the kitchen.

16. Several projectile impacts were visible in the door and walls of the northeast bedroom. These impact marks were visible from the living area, as well as from inside the bedroom itself. Several items were collected from the northeast bedroom and its immediate vicinity. The items included projectiles lodged in the northeast bedroom's walls and doors. Additionally, carpet, shoes, a handbag, and a notebook stained with a reddish-brown substance were collected from the northeast bedroom.

17. A dried reddish-brown substance was located at the base of a wheelchair ramp located on the west side (front) of the residence. There were several gravel and soil areas near the wheelchair ramp darkened by stains of a dried reddish-brown substance. These stained soil and gravel areas were swabbed for potential DNA evidence.

18. FBI Agents interviewed Clarissa Jodie (hereinafter Clarissa) on March 31, 2022. Clarissa stated DN (reported missing) was her cousin-brother and had been missing

5

since the shooting reported on March 26, 2022. Clarissa's friend, who was afraid to provide information to law enforcement authorities, relayed information indicating Ryan Johnson (hereinafter Ryan) killed DN and possibly MB (also reported missing). DN and MB were allegedly at Christopher's residence on the night of the shooting.

19. Hopi Law Enforcement Services (HLES) relayed a report on April 2, 2022, indicating KK was reported missing by her brother. KK, whom KB observed at Christopher Kanuho's residence the night of the shooting, had not been seen since March 26, 2022.

20. FBI Agents interviewed Alexandra Johnson (hereinafter Alexandra) on April 5, 2022. Alexandra confirmed she uses the nickname "Ziggy." Alexandra also confirmed she is acquainted with Ryan. I have since obtained information indicating Alexandra and Ryan have a familial relationship.

21. FBI Agents interviewed Rhonda Begay (hereinafter Rhonda) on April 21, 2022, following a referral from the Winslow (Arizona) Police Department. Rhonda stated that on March 25, 2022, she observed Mike Duffy (hereinafter Mike) near her residence. Mike was wearing dark clothing, he was dirty, and his face was covered with a blue bandanna. Mike requested Rhonda hide a firearm on his behalf. Rhonda declined Mike's request to hide the firearm. Mike then stated he shot DN, MB, and a woman who was caught in an exchange of gunfire when a dispute arose during a drug deal gone wrong at Christopher Kanuho's residence. Mike then exposed the grip of a black handgun stowed in his waistband to Rhonda. Mike again asked Rhonda whether she would hide a firearm on his behalf. Rhonda again declined Mike's request. Mike stated he would kill Rhonda

6

if she told anyone about what he had just disclosed to her. Rhonda then observed Mike placing a black backpack into the trunk of an immobile blue four-door sedan located outside of Alexandra Johnson's residence.

22. Navajo Criminal Investigator (CI) Alejandro Dayea drove to Alexandra Johnson's residence, (address known to me) in Teesto, Arizona. CI Dayea located and photographed an immobile, silver four-door sedan parked near the front door of Alexandra's residence (see photograph in **Attachment A**). The vehicle lacks a visible license plate and manufacturer identification.

23. FBI Agents sent a text message containing a photograph of the vehicle depicted in **Attachment A** to Rhonda on April 22, 2022. Rhonda confirmed the vehicle depicted in the text message and **Attachment A** is the vehicle she described in her interview on April 21, 2022.

## THINGS TO BE SEARCHED FOR AND SEIZED

24. Based on the foregoing, your Affiant seeks permission to search the silver four-door sedan described in **Attachment A** for evidence pertaining to the assault of KB. Based on your Affiant's training and experience, it is known to your Affiant that blood evidence may be transferred and/or deposited during and after an assault and/or murder, particularly when a weapon is used. For example, blood may be transferred onto the suspect's hands and clothing. This blood evidence, in addition to the subject's own DNA, may be transferred to other items, such as the exterior and interior of a vehicle. While sometimes blood evidence is clearly visible, it often requires observation and analysis by forensic technicians in a laboratory setting to detect, analyze, and/or compare this evidence.

Such evidence may corroborate the testimony of witnesses and lead to the discovery of additional items of evidence. Your Affiant seeks to search for and collect blood evidence, to include blood, dried blood, and/or substances that appear to be blood, which may be on the exterior and/or interior of the vehicle described in **Attachment A**. Your Affiant further requests to seek and collect the presence of DNA transferred to the exterior and interior of the vehicle described in **Attachment A** in order to corroborate witness testimony.

25. Your Affiant seeks permission to search for a firearm, or firearms, in the vehicle described in **Attachment A**. This firearm, or firearms, will further corroborate witness testimony and possibly provide evidence leading to the identity, or identities, of a possible suspect or suspects. Laboratory analysis of the firearm(s) will assist in identifying whether the firearm(s) was used during KB's assault, and whether the alleged suspect or suspects handled and/or used the firearm(s) in the commission of a crime or crimes.

26. Your affiant also knows indicia of ownership and/or use of a vehicle is important in a criminal case. Such information may help establish the location of a crime, the concealment of a crime, potential and/or likely suspects, and potential and/or likely witnesses. Based on your Affiant's training and experience, indicia of ownership includes vehicle registration, proof of insurance, mail (e.g., bills) addressed to the vehicle's owner(s) and/or operators, driver's licenses and/or identification cards, personal property such as clothing that may identify the vehicle's owners and/or operators, and photographs of the vehicle's owners and/or operators.

27. The things to be searched for and seized are described further in **Attachment B**.

8

## CONCLUSION

28. This affidavit is sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose.

29. Based on the information in this affidavit, your Affiant respectfully submits there is probable cause to believe that evidence described in **Attachment B** supporting an investigation related to violations of 18 U.S.C. §§ 1153, 113(a)(3) and 113(a)(6) will be discovered in the vehicle described in **Attachment A**.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

_____
Brian McGrew
Special Agent, FBI

Sworn by Telephone

Date/Time: _____

4/22/2022
Date

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.04.22 13:35:17 -07'00'

Honorable Camille D. Bibles
United States Magistrate Judge

9

## ATTACHMENT A – PROPERTY TO BE SEARCHED

**DESCRIPTION OF VEHICLE:** A silver four-door sedan with no license plate, no visible manufacturer's identification, and no visible vehicle identification number.

The vehicle is currently located in front of NHA Housing in Teesto, Arizona (specific address is known to me)

**PHOTO ATTACHED:** Yes



## ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED

1. Any evidence of assault, including but not limited to blood evidence, including dried blood or substances that appear to be blood, which may be on the exterior of the vehicle, the interior of the vehicle, and clothing, weapons, or items used to clean up the same (such as cloth towels, washcloths, or paper towels).

2. Fingerprint or other DNA evidence, which may be found on surfaces in the interior and exterior of the vehicle.

3. Any firearms, firearm projectiles, or spent casings located inside of the vehicle.

4. Indicia of ownership, occupancy, and/or use of the vehicle, including such things as: mail (e.g., bills) that may be addressed to the occupant(s), driver's licenses and identification cards, vehicle title, registration, and personal property such as clothing that may identify the owners and/or occupants of the vehicle.

5. Any bags, such as backpacks, handbags, duffle bags, or other luggage possibly used to conceal or otherwise carry a firearm(s), or clothing with possible blood and/or blood-like substances.

6. Photographs and/or video of the vehicle and the things seized.